IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ENRICO E. BROWN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PWG-20-1087 |
| PRINCE GEORGES COUNTY DEPARTMENT OF CORRECTION, MARY LOU McDONOUGH, OFFICER LILLY, OFFICER IGWIE, CORIZON LLC, ABU KALOKOH, DR. MESKEREN ASRESAHEGN,[1] Defendants | * * * * | |

***

## MEMORANDUM OPINION

In his complaint filed pursuant to 42 U.S.C. § 1983, self-represented plaintiff Enrico E. Brown[2] alleges that Defendants violated his rights under the Fourteenth Amendment. Defendants Abu Kalokoh, Dr. Meskeren Asresahegn, and Corizon, LLC (the "Corizon Defendants")[3] through their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 34. Defendants Prince George's County Department of Corrections, Director M. McDonough, Ofc. Lilly, and Officer Igwe, (the "PGDOC Defendants"), through their counsel, have filed a Motion to Dismiss. ECF No. 38. Mr. Brown has filed an opposition to the Motion, and supplemental responses, and Defendants filed Replies. ECF Nos. 42, 43, 45, 46, 48.

---

[1] The Clerk shall amend the docket to reflect the full and complete names of Defendants as indicated in the case caption.
[2] Brown is presently incarcerated at Maryland Correctional Institution, Jessup, MD (MCIJ).
[3] At the time the events at issue occurred, Brown was a pretrial detainee at the Prince George's County Detention Center (PGCDC).

The case is ripe for review.[4] I find a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Corizon Defendants' Motion, treated as a Motion for Summary Judgment[5] will be GRANTED. PGDOC Defendants' Motion to Dismiss will also be GRANTED due to Brown's failure to exhaust administrative remedies.

## BACKGROUND

### A. Brown's Allegations

The gravamen of Mr. Brown's Complaint is that on July 15, 2019, he fell out of the top bunk while he was sleeping and was injured. He alleges PGDOC Defendants improperly assigned him to a top bunk and Corizon Defendants failed to provide proper medical care for the injuries he sustained in violation of his rights under the Fourteenth Amendment. ECF No. 1 at 3-4.

On April 27, 2020, Brown filed this Complaint alleging that on July 15, 2019, he was assigned to Housing Unit H-17, cell 102, and while sleeping in the top bunk he fell out of the bunk to the concrete floor and suffered injuries. ECF No. 1, at 3. Brown states that on January 2, 2019 during intake at PGDOC, which was conducted by unidentified employees of Corizon, he was "mandated" a bottom bunk. *Id*. Brown alleges that on an unspecified date, Officers Igwe and Lilly relocated him from a bottom bunk in 218 to a top bunk in room 102. *Id*. He alleges that the move

---

[4] On April 1, 2021, the Court entered a Letter Order Regarding the Filing of Motions (ECF No. 51) which requires that all parties who desire to file a motion will serve on all other parties, and the Court, a letter containing a brief description of the planned motion and a concise summary of the factual and legal support of the motion. The parties were warned that failure to abide by the procedure may result in the non-compliant motions begin stricken. *Id*. Subsequent to the entry of the Letter Order, Plaintiff filed Motions to Verify Personal Injury Retainer (ECF No. 52) and in Support of Counsel (ECF No. 53). Plaintiff failed to comply with the Letter Order and the Motions are stricken.

[5] The Corizon Defendants expressly captioned their motion "in the alternative" as one for summary judgment and submitted materials outside the pleadings for the Court's consideration. As such, Mr. Brown was on notice that conversion under Rule 12(d) may occur, and he responded with additional exhibits for the Court to consider "A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)); *see also Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) ("It is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. . . .").

from a bottom bunk to a top bunk constituted "substantial negligence. And failure to follow standard operational procedure under 'ADA'. As a result of Ofc.'s discriminative acts. This negligence caused substantial injury to Brown. And violating above policy…" *Id*.

As a result of the fall, Brown was taken to Prince George's County Hospital where he was diagnosed with "No wake concussion", "Broken bone in wrist" and "Left lower back, hip and neck injury." ECF No. 1, at 3. Brown alleges that unidentified Corizon staff failed to follow up with prescribed therapy and treatment. *Id*.

Brown alleges that the officers and medical staff acted under the direction of Director M. McDonough and Mr. Abu Kalokoh, Health Services Administrator at PGCDC. ECF No. 1, at p. 3. He also alleges that Defendants: deliberately violated his rights; intentionally failed to respond to his medical grievance filed on July 29, 2019; and delayed and entirely denied him treatment including the "mandate" for bottom bunk status. EFC No. 1, p. 4.

2.  **Brown's Medical Care**

Brown entered PGCDC on January 2, 2019 and was cleared to be housed in general population. ECF No. 34-3, p. 31. He was offered, but declined, treatment for his mental health illnesses. *Id*., p. 64. There is no indication in the intake screening that he was assigned a bottom bunk. *Id*.

From January through June 2019, Brown was seen by various medical, dental, and mental health providers for a variety of complaints. ECF No. 34-3, pp. 34-38, 64-77. None of the records indicate he was assigned to a bottom bunk or reflect a basis for such assignment

On July 15, 2019, a medical emergency was called, and Brown was found on the floor of his cell, conscious. ECF No. 34-2, p. 3, ¶ 12; ECF No. 34-3, pp. 22, 25. Brown's cellmate reported Brown fell out of bed. The Emergency Response Team took Brown to a room to be evaluated by

3

Nurses Saba and Moji who sent Brown to the Emergency Department of Prince George's Hospital, boarded and collared. *Id.*; ECF No. 34-3, p. 39.

At the hospital, he scored 14 on the Glasgow Coma Scale and had a contusion on the left side of his head with no other injuries noted. ECF No. 34-3, p. 39. He stated that he did not know his age or name but was able to answer other questions. *Id*. He was diagnosed with a concussion. *Id.*, p. 53.

Brown underwent several CT scans that did not show any acute injury.[6] ECF No. 34-3, pp. 41-48. He also had chest and pelvic x-rays which were unremarkable for acute injury. *Id.*, pp. 49, 51. The x-ray of Brown's left wrist showed no evidence of acute fracture, subluxation or dislocation, and no evidence of bone destruction or bony erosions. ECF No. 34-3, p. 50. He was diagnosed with mild widening of the scapholunate joint and scapholunate dissociation. *Id*.

Brown's discharge notes from the Emergency Department indicated Brown had a left wrist contusion with "no pain in wrist after initial assessment." ECF No. 34-3, p. 58; ECF No. 34-2, p. 4, ¶ 14. He was discharged with a splint and told to follow up with an orthopedist. *Id*.

When he returned to PGCDC, he rated his pain as a zero on a ten-point scale. ECF No. 34-3, p. 27; ECF No. 34-2, p. 4, ¶ 15. His hand grip strengths were equal and strong. ECF No. 34-3, p. 28; ECF No. 34-2, p. 4, ¶ 15. *Id*. On August 7, 2019, he was seen for follow up by a provider and reported no acute distress. His hand grips were again equal and strong. ECF No. 34-2, p. 4, ¶ 16; ECF No. 34-3, pp.78-79.

On August 27, 2019, Brown reported pain in his right hand, which was not the hand injured in the fall. ECF No. 34-2, p. 5, ¶ 18; ECF No. 34-3, pp. 84-85. He also complained of an eye injury.

---

[6] Mild spondylosis and degenerative disc disease were observed in the cervical area. ECF No. 34-3, p. 48.

*Id.* He was given naproxen for pain relief and told to contact the medical department if he developed new symptoms or his current symptoms worsened. *Id*.

Brown was seen on September 26, 2019, by a Physician's Assistant. ECF No. 34-2, p. 5, ¶ 19; ECF No. 34-3, pp. 86-87. He claimed he slipped in the kitchen in June and hurt his back. He also complained of a rash on his penis. *Id*. His hand grips were again assessed as equal and strong. He did not complain of any issues with his wrists. He was prescribed meloxicam for pain and clotrimazole for the rash. *Id*.

On October 1, 2019, Brown was transferred from PGCDC to Maryland Reception, Diagnostic Classification Center (MRDCC) where he complained of a scrotal hydrocele and lower back pain. ECF No. 34-2, p. 5, ¶ 20; ECF No. 34-3, pp. 2-8. He requested a lower bunk because the hydrocele and back pain made it difficult for him to climb into an upper bunk. ECF No. 34-3, p. 5. His request was approved. *Id*., p. 7. While housed at MRDCC Brown was treated for among other things, complaints of back pain which he attributed to the fall from his bunk. ECF No. 34-3, pp. 9-10. He was prescribed Naproxen for pain relief. *Id*.

On October 24, 2019, Brown was transferred to MCIJ. ECF No. 34-2, p. 6, ¶ 23; ECF No. 34-3, p. 11. He received treatment at MCIJ in December of 2019, unrelated to any complaints arising from the fall from his bunk. ECF No. 34-2, p. 6, ¶¶24-25; ECF No. 34-3, p. 21.

Dr. Asresahegn avers that "Brown's injuries from the fall were generally mild and did not require further intervention." ECF No. 34-2, p. 7, ¶ 27. He explains that "mild widening of the scapholunate joint and mild scapholunate dissociation, particularly when not accompanied with any pain or weakness, are not considered serious injuries." The diagnostic testing revealed no acute traumatic injury. Brown's Glasgow Coma Scale of 14 indicated mild brain injury that would be expected to resolve quickly without intervention. *Id*. Dr. Asresahegn further avers that while

the discharge instructions designated follow up with an orthopedist, no such visit was necessary. *Id.*

Additionally, Dr. Asresahegn further states that there is no record that Brown filed any "medical grievance complaint" around the time of his fall. ECF No. 34-2, p. 7, ¶ 30. Further, any request for medical treatment would be handled by a triage nurse, not Dr. Asresahegn or Abu Kalokoh. *Id.*

Abu Kalokoh avers that as the Health Services Administrator, he does not practice medicine or treat any inmates. ECF No. 34-4, ¶ 1. He serves in a budgetary, administrative, and operational planning role ( *id.*, ¶ 2) and does not respond to any inmate's "medical grievance' or request for treatment. *Id.*, ¶ 4. Kalokoh denies disregarding or ignoring Brown's medical needs. *Id.*, ¶ 5.

3. B**rown's Administrative Remedies**

PGCDC has an inmate grievance process that is detailed in the Inmate Handbook, which is provided to new inmates and is also available on request ECF No. 38-2, ¶ 5; ECF No. 38-3. While Brown utilized the grievance process for other matters (ECF No. 38-4), he did not file any grievances regarding the issues alleged in this case ECF No. 38-2, ¶¶ 6, 8, 9.

**STANDARD OF REVIEW**

A motion for summary judgment is granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she

would have the burden of proof. *Celotex*, 477 U.S. at 322-23. On those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In *Anderson*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. In this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). When the moving party expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

**DISCUSSION**

Defendants argue that they are entitled to summary judgment as a matter of law because Brown's allegations fail to establish a constitutional claim. In support, Defendants have filed verified copies of Brown's medical, mental health, and ARP records as well as affidavits.

Analysis

Medical Care

As a pretrial detainee at the time of the incidents alleged, Brown's claim that he was denied adequate medical care is analyzed under the Due Process Clause of the Fourteenth Amendment to the Constitution. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). Of import here, pretrial detainees "possess at least the same rights as convicted prisoners." *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

The Fourth Circuit has determined that the Eighth Amendment's deliberate indifference standard, applicable to convicted prisoners, also applies to claims of inadequate medical treatment made by pretrial detainees under the Fourteenth Amendment. *Hill*, 979 F.2d at 991-92 ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.") (citations omitted); *see Young*, 238 F.3d at 575 ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."); *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citation omitted).[7]

---

[7] In *Hill*, the Fourth Circuit adopted the deliberate indifference standard for a pretrial detainee but recognized that the constitutional protections for pretrial detainees could arguably be "greater" than those afforded to convicted prisoners. *Hill*, 979 F.2d at 991. Since *Hill,* the Supreme Court has called into question the equivalence between the standards applied to claims by pretrial detainees and those applied to claims by convicted inmates. In *Kingsley v.*

8

Deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Importantly, a judicial assessment of deliberate indifference has two aspects—an objective inquiry and a subjective inquiry. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

To satisfy the objective inquiry of a deliberate indifference claim, "the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To satisfy the subjective inquiry of a deliberate indifference claim, the plaintiff must show that the official "knows of and disregards an excessive risk to inmate safety or health." *Farmer v Brennan,* 511 U.S. 825, 837 (1994). "Where a deliberate indifference claim is predicated on a delay in medical care . . . there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

---

*Hendrickson*, 576 U.S. 389 (2015), the Court said that, unlike the standard applied to post-conviction excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment does not include a subjective component. *Id*. at 296-97.

Several circuits have extended this reasoning to hold that the standard for claims of pretrial detainees alleging inadequate medical care under the Fourteenth Amendment should not include a subjective component. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118,1124-25 (9th Cir. 2018). But, courts in this circuit, including courts in this district, have declined to extend the holding of *Kingsley* to claims of deliberate indifference to a serious medical need, noting that "neither this Court nor the Fourth Circuit has applied *Kingsley* to a pretrial detainee's claim of failure to protect or deliberate indifference to a serious medical need, where there are no allegations of force applied by the defendants." *See Perry v. Barnes*, No. PWG-16-705, 2019 WL 1040545, at *3 n.3 (D. Md. Mar. 5, 2019); *accord Mays v. Sprinkle*, No. 7:18CV00102, 2019 WL 3848948, at *1 (W.D. Va. Aug. 15, 2019); *Wallace v. Moyer*, CCB-17-3718; 2020 WL 1506343 at 6*n. 9.

A corporation cannot be held liable under § 1983 unless the entity's policies or customs caused one or more of its employees to deprive the plaintiff of a federally protected right. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–92 (1978); *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). An official policy may be created "by making a single decision regarding a course of action in response to particular circumstances." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (citing *Pembaur v. Cincinnati*, 475 U.S. 468, 481 (1986)). Brown has pointed to no policy of Corizon that he claims is responsible for his injuries and as such his complaint against Corizon is subject to dismissal.

Brown's verified complaint is based on personal knowledge and therefore acts as an opposing affidavit for summary judgment purposes. *See Carter v. Fleming*, 879 F.3d 132, 141 n.8 (4th Cir. 2018) ("'[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" (alteration in original) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ) ); *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) (holding that factual allegations contained in a verified complaint may establish a prima facie case under § 1983 sufficient to defeat summary judgment). Here, the parties do not dispute that the injuries Brown sustained when he fell from a top bunk were serious and needed attention. However, the record reflects that Brown was immediately assessed by medical staff and transported to the emergency department where he underwent extensive diagnostic testing. Ultimately he was diagnosed with a concussion and wrist

injury. His discharge instructions from the emergency department indicated he should follow up with an orthopedist regarding the wrist injury. Dr. Asresahegn avers that given Brown's report of no pain in his wrist at discharge from the hospital and return to the facility, along with the objective assessments of grip strength, follow up with an orthopedist was not necessary under the circumstances. Notably, Brown did not file any sick call slips complaining of pain in his wrist, nor did he submit any sick call slips regarding his concussion. Further, neither of the individually named medical defendants were responsible for Brown's day to day medical care. Under the circumstances there is simply no evidence that any of the named Defendants were deliberately indifferent to Brown's serious medical needs. Absent a genuine issue as to any material fact to support a claim of deliberate indifference, Defendants are entitled to summary judgment as a matter of law on this claim.

Exhaustion

PGDOC Defendants contend that Brown's complaint is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, because the allegations raised have not been properly presented through the administrative remedy procedure. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e (h). The phrase "prison conditions" encompasses "all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Notably, administrative exhaustion under § 1997e (a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 3d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 578 U.S. __, 136 S. Ct. 1850, 1856-57 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

PGCDC has an established grievance process. However, here, Brown failed to file any grievance regarding the allegations raised in his Complaint. As discussed above, the PLRA requires that inmates exhaust all available remedies. Because Brown failed to do so, the Court will dismiss Brown's claims against PGDOC Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' dispositive motions ARE GRANTED.[8] A separate Order follows

____July 13, 2021_____  _____/S/_____
Date                        Paul W. Grimm
                            United States District Judge

---

[8] The Court need not address Defendants' other defenses.

13